UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Alfred Vigorito, Linda Vigorito, and Mark Vigorito,<br>*Plaintiffs*,<br><br>*v.*<br><br>UBS PaineWebber, Inc.,<br>*Defendant*. | Civil No. 3:04cv1505 (JBA)<br><br><br><br>June 17, 2009 |

**RULING ON PLAINTIFFS' SUBSTITUTED
MOTION FOR RECONSIDERATION [Doc. # 90]**

In June 2002 Plaintiffs Alfred, Linda and Mark Vigorito ("Plaintiffs" or the "Vigoritos") filed an arbitration claim against Defendant UBS PaineWebber, Inc. ("Defendant" or "UBS")[1] for recovery of the value of investments they made with UBS, which dropped precipitously in value between 2000 and 2002.[2]  An arbitration was held on various dates from January to July 2004, when the arbitration panel of the New York Stock Exchange ("NYSE") rendered a decision denying the Vigoritos' $1.5 million claim against UBS but awarding them $32,893 in costs and fees.  Plaintiffs sought vacatur of the panel's decision by complaint filed in state court under the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*  UBS removed the action to this Court in September 2004 on the basis of diversity

---

[1] Defendant states that it is now known as UBS Financial Services, Inc.  (Def.'s Mem. Opp'n [Doc. # 94] at 1.)  The official case caption, however, has not been updated to reflect this change.

[2] The Court presumes the reader's familiarity with the factual and legal background of this case.  *See Vigorito v. UBS PaineWebber, Inc.*, 477 F. Supp. 2d 481 (D. Conn. 2007) (denying Plaintiffs' motion to vacate and granting Defendant's motions to confirm award and dismiss all claims); *Vigorito v. UBS PaineWebber, Inc.*, 557 F. Supp. 2d 303 (D. Conn. 2008) (denying Plaintiffs' first motion for reconsideration).

jurisdiction, and subsequently moved to dismiss all claims and confirm the arbitration award. Plaintiffs opposed this motion and moved to vacate the award on the ground, *inter alia*, that one member of the panel, Ronald Miller, evidenced "evident partiality" within the meaning of 9 U.S.C. § 10(a)(2) because his disclosure that his son Keith W. Miller was a part-time clerk for UBS was untimely and led Plaintiffs to believe, incorrectly, that his relationship to UBS was trivial. On March 13, 2007, following limited discovery, this Court denied Plaintiffs' Motion to Vacate and granted Defendants' Motion to Confirm and Motions to Dismiss All Counts, *see Vigorito v. UBS PaineWebber, Inc.*, 477 F. Supp. 2d 481 (D. Conn. 2007) (Ruling on Vacatur [Doc. # 67]), and Plaintiffs moved for reconsideration.

While Plaintiffs' First Motion for Reconsideration of the Ruling on Vacatur [Doc. # 69] was pending, the Second Circuit issued a related to arbitrators' obligations under § 10(a)(2) to disclose potential conflicts to parties. *See Applied Indus. Materials Corp. v. Ovalar Makine Ticaret Ve Sanayi, A.S.*, 492 F.3d 132 (2d Cir. 2007). In light of this decision, the Court granted Plaintiffs' first motion for reconsideration and directed the parties to brief its applicability. (*See* First Ruling on Motion for Reconsideration [Doc. # 71].) Also after the Court issued its Ruling on Vacatur, Plaintiffs obtained public information from the Financial Industry Regulatory Authority ("FINRA") concerning Keith Miller's employment history, which they included in their motion for reconsideration: that he has been employed at UBS from July 2003 to present, that he passed the General Securities Representative Examination ("Series 7") on February 28, 2008, that at some point during that period he

became a licensed stockbroker, that for five months in 1998 he worked for his father's company (Plaatsdale Investment Advisors), and that he had a business affiliation with another company operated by his father. (*See* FINRA Report, Ex. 1 to Pls.' Suppl. Mem. Supp. Mot. Reconsid. [Doc. # 77], at 4–5; Pls.' Suppl. Mem. Supp. Mot. Reconsid. at 6–8; *see also id.* at 8–9 (listing ten factual "points" for which "[t]here is evidence in the Record" regarding the evidence of Ronald Miller's partiality, and arguing that under *Applied Industrial Materials* "the Court has considerable cause to vacate the arbitration award on the present Record").)

On June 2, 2008, after considering the applicability of relevant caselaw, particularly *Applied Industrial Materials*, to the enlarged record—which included the "additional information about Keith Miller's employment" that "that the younger Miller at one time was employed by his father's securities firm, and that he worked for PaineWebber in a more substantial capacity than that described by Arbitrator Miller in his belated disclosure"—the Court again denied Plaintiffs' motion to vacate and granted Defendant's motions to dismiss all claims and confirm the award. *See Vigorito v. UBS PaineWebber, Inc.*, 557 F. Supp. 2d 303 (D. Conn. 2008) (Second Ruling on Plaintiffs' Motion for Reconsideration [Doc. # 82]). The Court concluded that even assuming, *arguendo*, that "evident partiality could be found" from

Ronald Miller's omissions,[3] it Plaintiffs' motion to vacate should be denied because they waived any objection to the Miller-UBS conflict. *See* 557 F. Supp. 2d at 306, 308.

Plaintiffs' Substituted Motion for Reconsideration of this second denial of its motion to vacate and grant of Defendant's motions asserts that Plaintiffs obtained the information about Keith Miller's employment from FINRA, not through discovery (to correct the Court's inaccurate statement that such information was obtained through discovery) and that the FINRA information constitutes "[n]ewly [d]iscovered [e]vidence" that "serve[s] the additional purpose of casting doubt upon the reliability of the evidence produced by the defendant relating to the issue of waiver, which has become the determinative issue." (Pls.' Am. Mem. [Doc. # 91] at 1, 16.) However, the Court's Ruling on Vacatur and Second Ruling on Plaintiffs' Motion for Reconsideration already addressed these documents and issues.[4] Moreover, since Plaintiffs obtained the documents on which they rely before submitting their March 2008 briefing regarding *Applied Industrial Materials*, the evidence is, in fact, not "newly available" to them. *Cf. Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 909 (2d Cir.

---

[3] The Court recognized "the impropriety of [Ronald] Miller sitting on his arbitration after failing to timely notify the parties of his son's employment with the defendant, having failed to accurately ascertain the details of his employment, and failing to recognize his conflicted circumstance in the first place." 557 F. Supp. 2d at 308.

[4] In the former, the Court concluded both that "Miller's disclosure was not materially defective" and that Plaintiffs' counsel at the arbitration hearing "waived objection to Miller as arbitrator when she responded to his disclosure." 477 F. Supp. 2d at 487. In the latter, the Court concluded that even assuming Miller's "evident partiality could be found" from the FINRA documents, "the plaintiffs waived the conflict of which they had knowledge—that Miller's son was employed by defendant." 557 F. Supp. 2d at 306, 308.

1997) (physician's affidavit "was not 'newly discovered evidence' that might have justified reconsideration of the court's decision" where, at summary judgment, litigant possessed affidavit but did not submit it).

Responding to Plaintiffs' request that the Court "articulate why the error or oversight" regarding how information of Keith Miller's employment came to light "does not change its ruling" (Pls.' Reply Mem. [Doc. # 96] at 2), the Court points to its conclusion in its Second Ruling on Plaintiffs' Motion for Reconsideration that Plaintiffs' counsel's waiver of Ronald Miller's conflict was a knowing waiver on the basis of "the single salient fact provided by Miller's disclosure that was necessary to form an objection to Miller's participation: that Miller's son worked for the defendant"—and *not* on any evidence uncovered through discovery or Plaintiffs' research, which evidence, however obtained, does not "materially alter[]" that "salient fact."  557 F. Supp. 2d at 307.

Indeed, the FINRA documents reflecting Keith Miller's employment at UBS from July 2003 to the present indicate that he passed the General Securities Representative Examination ("Series 7") on February 28, 2008, three and a half years after the Vigoritos' arbitration, and the discovery documents related to Keith Miller's hiring reflect that in July 2003, five months before arbitration began, he was still a student at San Francisco State University majoring in "Radio & TV" and was hired by UBS to be "a part time summer intern (BP) making $15.00 an hour" (UBS Employment Documents, Ex. N to Pls.' Reply Mem., at 6, 8).  While Keith Miller's status may eventually have evolved to full-time broker

5

over the ensuing years, Plaintiffs present no new factual or legal basis demonstrating Ronald Miller's belated disclosure to have been so inaccurate at the time of the arbitration that their counsel's waiver of objection to his participation was not a knowing one.

Plaintiffs assert that their belated discovery of Keith Miller's employment history indicates that their waiver was not a knowing one, pointing to what they call a "very simple standard" the Second Circuit "articulated" in *Applied Industrial Materials*. (*See* Pls.' Am. Mem. at 20, 23.) This standard—which holds that "[a]lthough it is true that a disgruntled party cannot object after an award has been made, this rule applies only where the party has actual knowledge of the facts that form the basis of the objection"—was first articulated in *Morelite Constr. Corp. v. N.Y. City Dist. Council Carpenters Benefit Funds*, 748 F.2d 79, 84 n.5 (2d Cir. 1984). The *Applied Industrial Materials* court simply quoted *Morelite* in a parenthetical in a footnote. *See* 492 F.3d at 139 n.2.

This Court, having twice considered Plaintiffs' waiver under this standard—including once in light of the FINRA documents—has twice concluded that it was a valid waiver made with knowledge of the "salient fact" on which objection would be based, and has twice rejected evident partiality argument because it was waived. The third iteration of Plaintiffs' same argument provides no new grounds on which to reconsider this twice-reached conclusion.

Because Plaintiffs present no new factual or legal basis in whose light the Court should reconsider its Second Ruling on Motion for Reconsideration, *see Virgin Atl. Airways,*

*Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) ("[t]he major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice'"), they have not pointed out any "matters . . . that might reasonably be expected to alter the conclusion reached by the court," and instead "seek[] solely to relitigate an issue already decided," *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

For the foregoing reasons, Plaintiffs' Motion for Reconsideration [Doc. # 90] is DENIED.

IT IS SO ORDERED.

/s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 17th day of June, 2009.